```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
BERNARDITA DURAN,

                        Plaintiff,                                      **MEMORANDUM & ORDER**

        - against -                                                     10-CV-4538 (RRM)(SMG)

THE J. HASS GROUP L.L.C. and
THE LAW OFFICE OF JASON
HASS, P.L.C.,

                        Defendants.
----------------------------------------------------------------------X
```
ROSLYNN R. MAUSKOPF, United States District Judge.

Plaintiff brings this action against defendants, the J. Hass Group, L.L.C. and the Law Office of Jason Hass, P.L.C., for violations of the Credit Repair Organizations Act, 15 U.S.C. §§ 1679 *et seq.*, ("CROA") and state law. Presently before the Court is defendants' motion to compel arbitration, seeking a stay or dismissal of the action. (Doc. No. 27.) Although plaintiff concedes this dispute must be arbitrated, she seeks an order finding the forum selection clause of her contract with defendants unconscionable and therefore unenforceable. (Doc. No. 29.) For the reasons set forth below, defendants' motion to dismiss is GRANTED and plaintiff's request is DENIED.

## BACKGROUND

The following facts are as alleged in the Amended Complaint. (Am. Compl. (Doc. No. 12).) Bernardita Duran, plaintiff, is a disabled woman receiving Supplemental Security Income benefits ("SSI"). (*Id.* at ¶ 5.) When the actions that led to this lawsuit commenced, plaintiff had over thirty thousand dollars of credit card debt. (*Id.* at ¶ 89.)

Defendants are debt settlement companies located in Arizona that offer to settle their clients' credit card debts for a reduced amount. (*Id.* at ¶¶ 1-4, 13-19.) In October 2007, plaintiff

spoke about her credit debt with a Farmingdale, New York company that solicited customers for defendants. (*Id.* at ¶¶ 56-59, 81.) During her dialogue with the New York company, she was introduced to defendants' debt settlement program. The program called for plaintiff to stop paying her creditors and instead send defendants a monthly payment of approximately $500 for thirty-six months. (*Id.* at ¶¶ 87-89, 108-109.) Her money would be deposited into an escrow account, from which defendants would pay settlements they negotiated with her creditors. (*Id.* at ¶¶ 26, 89.) For this service, defendants charged a fifteen percent fee - - in plaintiff's case $4500 - - to be collected in the first ten months of the program. (*Id.* at ¶¶ 89, 91-98.)

Plaintiff signed a contract with defendants in October of 2007. (*Id.* at ¶ 104.) Most significantly for purposes of the present motion, paragraph 12 of the contract included a venue and jurisdiction clause stating:

> All disputes under this Agreement shall be submitted to binding arbitration, which shall take place in Maricopa County, Arizona. This Agreement is executed and interpreted under the exclusive laws of the State of Arizona and the parties understand that they agree to be bound by the personal jurisdiction of Maricopa County, Arizona when addressing any disputes arising from this agreement.

(Declaration of Jason Hass (Doc. No. 17) ("Hass Dec.") at Ex. A.)

Four months after beginning the program, plaintiff was sued by one of her creditors. (Am. Compl. at ¶¶ 110-11.) Because the defendants' fee was taken from the first ten months' payments, plaintiff had no money in escrow when she was sued, despite the fact that she had paid almost $2000 to defendants at that time. (*Id.*) After eight months in the program, when it came time to pay a negotiated settlement, plaintiff had only $640.24 in her escrow account, even though she had paid defendants $3,930.88. (*Id.* at ¶ 115.) Defendants advised her to find money outside her escrow account to pay the settlement. (*Id.*) At this point, plaintiff's debt had increased overall because of penalties imposed when plaintiff stopped paying her creditors. (*Id.*

2

at ¶¶ 118-19.) Plaintiff sought legal advice, stopped paying defendants and asked for a refund. (*Id.* at ¶¶ 120-24.) Defendants returned $185.06 to plaintiff. (*Id.*)

Plaintiff filed this action in October of 2010, alleging, *inter alia*, violations of CROA and New York state law. (Doc. No. 1.) In February of 2011, defendants sought leave to file a motion to compel arbitration in Arizona pursuant to their contract with plaintiff. (Doc. No. 9.) On March 4, 2011, plaintiff filed an amended complaint, alleging substantively similar claims, and responded to defendants' proposed motion. (Doc. Nos. 12-13.) Citing *Greenwood v. CompuCredit Corporation*, 615 F.3d 1204 (9th Cir. 2010), plaintiff argued that CROA claims could not be arbitrated because CROA created an exclusively judicial remedy. (Doc. No. 13.)

At a conference on April 28, 2011, the Court noted that there was a circuit split on the arbitrability of CROA claims and that a petition for *certiorari* in *Greenwood* was pending before the Supreme Court. Subsequently, the Supreme Court accepted *certiorari* and overturned the Ninth Circuit's decision, holding that CROA claims may be subject to arbitration. *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665 (2012). On January 10, 2012, the Court instructed plaintiff to address whether the action survived in light of the Supreme Court's decision. (Order, dated Jan. 10, 2012.) In response, plaintiff conceded the dispute must be arbitrated, but requested that the Court strike as unconscionable the forum selection clause requiring arbitration in Arizona and instead order that arbitration take place in New York. (Doc. No. 26.) Defendants renewed their motion to compel, maintaining that the contractual arbitration clause was properly enforceable. (Doc. No. 27.) It is that motion that is now before the Court.

3

## DISCUSSION

The Federal Arbitration Act ("FAA") guides dispute resolution through arbitration. *See* 9 U.S.C. §§ 2-4. In this case, defendants have moved for an order under Section 4 of the FAA "dismissing or alternatively, permanently staying this action." (Def. Ltr., dated Feb. 7, 2012 (Doc. No. 27) at 2; *see also* Def. Ltr., dated May 18, 2012 (Doc. No. 30) at 8 (seeking to have this action "permanently stayed and the plaintiff directed to proceed to arbitration if she wishes to pursue her claims further"); Def Mot. (Doc. No. 16) at 1 (seeking a motion to compel under 9 U.S.C. § 4).)

Although Section 4 of the FAA empowers the Court to compel arbitration "in accordance with the terms of the [parties'] agreement," it also dictates that the "hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed." 9 U.S.C. § 4. Section 4's language creates an unavoidable conflict where, as here, the arbitration agreement sets the arbitration forum (Arizona) outside the district in which the motion to compel is pending (New York). Although there is no universal consensus on how to resolve such conflict, many courts have determined that "where the arbitration agreement designates a specific forum, only a district court in that forum may compel arbitration." *J.P. Morgan Secs. Inc. v. La. Citizens Prop. Ins. Corp.*, 712 F. Supp. 2d 70, 81-83 (S.D.N.Y. 2010) (collecting cases); *see also Nat'l City Golf Fin. v. Higher Ground Country Club Mgmt. Co.*, 641 F. Supp. 2d 196, 202 (S.D.N.Y. 2009) (finding the court "lack[ed] authority pursuant to 9 U.S.C. § 4 to compel arbitration outside its district" where movant sought to compel arbitration in Arizona (quotation marks omitted)).

Yet, resolution of the proper interpretation of Section 4 is unnecessary here. Rather, the Court will consider defendants' motion under Section 3 of the FAA where it more properly

4

belongs. *See Symphony Fabrics Corp. v. Knapel*, No. 07-CV-6606(GEL), 2008 WL 2332333, at *3n.2 (S.D.N.Y. Jun. 2, 2008) (treating a motion to compel arbitration under a contract contemplating arbitration in New Jersey as seeking the only "available" remedies - - dismissal or stay under Section 3). Section 3 states:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

Although Section 3 contemplates only a stay of an action in favor of arbitration, district courts also have the "discretion to dismiss - - rather than stay - - an action when all of the issues in it must be arbitrated." *Milgrim v. Backroads, Inc.*, 142 F. Supp. 2d 471, 476 (S.D.N.Y. 2001), *aff'd* 91 Fed. App'x 702 (2d Cir. 2002); *see also Johnson v. Tishman Speyer Props., L.P.*, No. 09-CV-1959(WHP), 2009 WL 3364038, at *4 (S.D.N.Y. Oct. 16, 2009.)

When faced with a request to stay or dismiss an action in favor of arbitration, the moving party must show that (1) there is a valid agreement between the parties to arbitrate disputes, and (2) the instant dispute falls within the scope of the arbitration agreement. *Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001); *Bentley v. Champion Courier, Inc.*, No. 12-CV-1327(KBF), 2012 WL 2952896, at *1 (S.D.N.Y. Jul. 18, 2012). Yet, the court's role in resolving the scope of an arbitration provision can be misleading as the word "dispute" does not cover all manner of disagreements related to an arbitration. Rather, the Supreme Court has distinguished between the "narrow" and "limited" authority of the courts to construe "gateway dispute[s]" about the "question of arbitrability," such as whether an

arbitration clause covers a "particular type of controversy," and the more "general circumstance," involving merely "procedural questions" which are "presumptively not for the judge, but for an arbitrator, to decide." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002); *UBS Fin. Servs., Inc. v. W. Va. Univ. Hosps., Inc.*, 660 F.3d 654, 654-55 (2d Cir. 2011). The key distinction is between "whether [the parties] agreed to arbitrate a matter," which is a question of arbitrability for the courts, and "what kind of arbitration proceeding the parties agreed to," which is a procedural question left to the arbitrator. *UBS Fin. Servs., Inc.*, 660 F.3d at 654-55 (quoting *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452-53 (2003) (plurality)).

In this case, plaintiff concedes that there is an arbitration agreement and that the underlying dispute is subject to arbitration. (Pl. Ltr., dated Jan. 24, 2012 (Doc. No. 26) at 1.) Plaintiff argues, nevertheless, that the Court retains jurisdiction to determine where the arbitration should take place. Plaintiff claims that is so because the forum selection clause - - directing arbitration in Arizona - - is unconscionable. (Pl. Ltr., dated May 9, 2012 (Doc. No. 29) at 1, 12.) Although the Court sympathizes with plaintiff's predicament, it may only consider plaintiff's unconscionability claim if, as discussed above, there remains a substantive question of arbitrability, not just a procedural issue. *See Howsam*, 537 U.S. at 85.

The validity of contractual clauses dictating the forum for arbitration is now commonly agreed to be a procedural matter. Indeed, numerous federal courts have held as much. *See UBS Fin. Servs., Inc.*, 660 F.3d at 655 (finding that "venue is a procedural issue" and "the District Court lacked subject matter jurisdiction to resolve it"); *Cent. W. Virginia Energy, Inc. v. Bayer Cropscience LP*, 645 F.3d 267, 274 (4th Cir. 2011) (holding that forum selection is procedural because it "does not implicate whether to proceed by arbitration, but which arbitration panel should decide certain issues"); *Richard C. Young & Co. v. Leventhal*, 389 F.3d 1, 5 (1st Cir.

2004) ("[D]etermining the place of arbitration is simply a procedural matter and hence for the arbitrator."); *Gill v. World Inspection Network Int'l, Inc.*, No. 06-CV-3187 (JFB), 2006 WL 2166821, at *4-5 (E.D.N.Y. Jul. 31, 2006) (holding that plaintiff is unlikely to be able to show that the unconscionability of a forum selection clause is a gateway issue for the courts to decide); *Ciago v. Ameriquest Mortg. Co.*, 295 F. Supp. 2d 324, 330-31 (S.D.N.Y. 2003) ("Once this Court determines that the parties have agreed to arbitrate, the validity and meaning of specific provisions within the Agreement to arbitrate is a matter for the arbitrator to decide."). Plaintiff has offered no rationale for treating this forum selection clause any differently. The Court finds, therefore, that the forum selection clause is a purely procedural matter.

Deciding that this dispute is procedural does not entirely end the matter - - it creates a "presumpt[ion]" that the matter is solely for the arbitrator. *Howsam*, 537 U.S. at 85; *UBS Fin. Servs., Inc.*, 660 F.3d at 655 ("[F]orum selection clauses in arbitration agreements raise presumptively arbitrable procedural questions."). But, that presumption becomes controlling, where, as here, there is a complete "absence of any statement to the contrary in the arbitration agreement." *Howsam*, 537 U.S. at 85. As referenced above, the contract plainly states; "All disputes under this agreement shall be submitted to binding arbitration, which shall take place in Maricopa County, Arizona." (Hass Dec. at Ex. A.) The contract contains nothing to suggest that the parties intended the courts to decide venue.[1] Thus, because plaintiff concedes she is required to arbitrate the underlying dispute, because forum selection is an issue presumptively left to the arbitrator and because the contract contains no language overcoming such presumption, this Court has no authority to intervene.

---

[1] Plaintiff argues that the contract's inclusion of a severability clause, which contemplates the survivability of portions of the contract in "any jurisdiction," demonstrates the parties did not intend just an Arizona arbitrator to settle disputes between them. (Pl. Ltr., dated May 9, 2012, at 5-6.) That contention borders on frivolous. The fact the parties sought to protect themselves should the contract be challenged in an unexpected jurisdiction says absolutely nothing about where they agreed challenges should properly be brought.

7

There remains only to decide whether to stay or dismiss the action. Given that the arbitration is to take place in Arizona and all claims as between all parties are subject to arbitration, the Court sees "no useful purpose [that] will be served by granting a stay" and therefore dismissal is the appropriate remedy. *Johnson*, 2009 WL 3364038, at *4 (quotation marks omitted); *see also Milgrim*, 142 F. Supp. 2d at 476.

## CONCLUSION

Accordingly, defendants' motion to dismiss this action in favor of arbitration (Doc. No. 27) is GRANTED. Plaintiff's request that this Court alter the arbitration agreement by changing the location of the arbitration (Doc. No. 29) is DENIED. As such, this action is DISMISSED, and the Clerk of the Court is directed to close the case.

SO ORDERED.

Dated: Brooklyn, New York
August 3, 2012

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge

8